IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT HILARIDES, dba<br>HILARIDES DAIRY, dba HILLARIDES<br>TRANSPORTATION and dba SIERRA<br>CATTLE COMPANY, and DOES 1-20<br>INCLUSIVE,<br><br>　　　　Defendants. | 1:12-cv-0294 AWI DLB<br><br>MEMORANDUM OPINION<br>AND ORDER ON<br>DEFENDANT'S MOTION FOR<br>SUMMARY ADJUDICATION<br><br>Doc. # 18 |

　　This is an action for money damages by plaintiff Kevin Williams ("Plaintiff") against defendant Robert Hilarides dba Hilarides Dairy, Hilarides Transportation, and Sierra Cattle Company (collectively, "Defendant"). Plaintiff's First Amended Complaint ("FAC"), which was removed from Kern County Superior Court on the basis of federal subject matter jurisdiction, alleges claims for relief based on unpaid overtime wages under both state and federal law, for failure of Defendant to compensate for meal breaks, rest period breaks, and for constructive termination in violation of public policy. Plaintiff also alleges a claim for recovery of unpaid wage penalties pursuant to California Labor Code §§ 203, 226.3 and 226. Currently before the court is Defendant's motion for summary adjudication of Plaintiff's first claim for relief only, which alleges failure to pay overtime wages in violation of state and federal law. Defendant

contends that Plaintiff was exempt from statutory requirements for overtime payment. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

**FACTUAL BACKGROUND/UNDISPUTED MATERIAL FACTS**

Defendant's motion for summary adjudication relies on a surprisingly small number of undisputed material facts. Defendant's second proffered undisputed material fact alleges that Plaintiff "was employed as a truck driver for Hilarides Dairy from March, 2009 to August 12, 2010, hauling milk from Hilarides Dairy to Hilmar Cheese Plant and hay from Rio Vista, California to Hilarides Dairy." Doc. 23-2 at ¶ 2. Plaintiff disputes the proffered fact on two grounds. Plaintiff first alleges he was employed by Hilarides Transportation Company, a separate entity from the Dairy. Second, and perhaps more important, Plaintiff alleges the cargo he hauled to Hilmar Cheese Plant was a milk product that was result of the treatment of raw milk to a process of "ultra-filtration" which removed a substantial portion of the water from the untreated milk.

Defendant's first proffered material undisputed fact alleges that Plaintiff operated a truck or trucks while employed by Defendant that "had a gross vehicle weight rating of 80,000 pounds." Doc. # 23-2 at § 1. Plaintiff disputes the proffered fact contending that Defendant lacks a factual basis for the testimony and that Defendant provided competent evidence to show that the gross weight rating of the truck(s) he operated was/were less than 26,000 pounds. As to Defendant's final two proffered material facts, there is no disputed that the hay Plaintiff hauled from Rio Vista was used as feed for the cattle or that "Hilmar Cheese Company is a plant that process the milk and makes cheese." Doc. # 23-2 at ¶¶ 3, 4.

**PROCEDURAL HISTORY**

Plaintiff's original complaint was filed in Tulare County Superior Court on May 6, 2011. Plaintiff's FAC, which alleged for the first time a claim for failure to pay overtime in violation of federal law, was filed in the same court on February 17, 2012. Plaintiff's FAC was removed to this court on February 27, 2012. Plaintiff's motion to remand was denied on June 19, 2012. The

instant motion for summary adjudication of Plaintiff's overtime claim for relief was filed on October 31, 2012. Plaintiff's opposition was filed on November 20. 2012, and Defendant's reply was filed on November 26, 2012. The matter was taken under submission as of December 3. 2012.

**LEGAL STANDARD**

Summary judgment or summary adjudication is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

4

Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

Plaintiff's claims for failure to pay overtime compensation are alleged in Plaintiff's first claim for relief pursuant to California Business & Professions Code § 17200 which provides a cause of action for "any unlawful, unfair, or fraudulent business act or practice . . . ." Id. The violation of a federal statute may serve as the predicate for a claim pursuant to section 17200. See Citizens for a Better Environment - California v. Union Oil Co. Of California, 996 F.Supp. 934, 938 (N.D. Cal. 1997) ("The fact that most violations of § 17200 are based on violations of state law does not preclude the use of a violation of federal law as a grounds for § 17200 liability"). Plaintiff alleges that Defendant failed to pay overtime wages due in violation of California Labor Code § 1194 and Wage Order No. 9-2001 and failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 and 207. There is no dispute that Plaintiff commonly worked between 12 and 17 hours per day – an amount that would warrant overtime pay if Plaintiff were not exempt from the overtime statutes in question. Thus, in order to prevail on the motion for summary adjudication on Plaintiff's first claim for relief, Defendant must show that Plaintiff was exempt from both the state and federal overtime statutes.

**I. Overtime Requirements – California Law**

California law regarding conditions of labor, including regulation of maximum hours of

5

work and overtime pay, is committed to the Industrial Welfare Commission ("IWC"). Cal. Labor Code § 1198. Regulations developed by the IWC are promulgated through "Wage Orders." Collins v. Overnite Transportation Co., 105 Cal.App.4th 171, 174-175 (1st Dist. 2003) (IWC has "a quasi-legislative power" to promulgate wage orders). As an initial matter, the court notes that the parties cast the statutory underpinning of the obligation, if any, of Defendant to pay overtime wages to Plaintiff differently. Plaintiff contends that the obligation to pay overtime wages is governed by Wage Order 9, the wage order that governs wage relationships in the transportation industry and is codified at Cal. Admin. Code § 11090. Defendant contends that Defendant is subject to the terms and conditions imposed by Wage Order 14, which pertains to persons working in agricultural occupations.

For purposes of determining overtime obligations under California law it is not necessary to make a determination whether Plaintiff is properly classified as a transportation worker or as an agricultural worker. Both Wage Orders 9 and 14 contain the identical language:

> The provisions of [the basic overtime regulation set forth in subsection 3(A)] are not applicable to employees whose hours of service are regulated by:
>
> (1)  The United States Department of Transportation Code of Federal Regulations , Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers, or;
>
> (2)  Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.

8 CCR § 11090(3)(L) (Wage Order No. 9); 8CCR §11140(3)(D) (Wage Order No. 14). Title 49 subsections 395.1 to 395.13 regulate certain aspects of driver activity including required time off between assignments, hours of continuous driving, required rest breaks and similar requirements pertaining to documentation of rest breaks. Defendant alleges the truck or trucks driven by Plaintiff are regulated by Title 13 of the California Code of Regulations, subchapter 6.5, section 1200 (13 C.C.R. § 1200) because the trucks have a "gross vehicle weight" rating in excess of

26,000 pounds.[1] Therefore, Defendants contend that Plaintiff is exempt from the overtime provisions of either Wage Order 9 or 14, because the truck(s) he drove was/were within the exception language provided in both Wage Orders.  Plaintiff opposes Defendant's contention that he was exempt from the overtime provisions of Wage Order 9 (and by extension, Wage Order 14) on the ground Defendant's motion for summary adjudication fails to establish that the truck or trucks Plaintiff drove had a gross vehicular weight greater than 26,000 pounds.  Plaintiff argues that the *tare* weight of the truck he drove – that is, the empty weight – is less than 26,000 pounds and that the tare weight of the truck is determinative of its classification.  Although the terms "gross vehicle weight" and "gross vehicle weight rating" are not defined by statute, California courts, as well as federal safety regulations regarding brakes define "gross vehicle weight" as the total weight of the truck plus cargo plus passengers and defines "gross vehicle weight rating" as the maximum allowable gross weight as determined by the manufacturer.  See Joyce v. Ford Motor Co., 198 Cal.App.4th 1478, 1491, 1492 (3rd Dist. 2011) (citing 49 C.F.R. § 393.52(e)).

   Defendants have offered evidence sufficient to establish that the truck or trucks Plaintiff drove while employed by Defendant fell within the class of motor vehicles that are exempted from the overtime provisions of both of the Wage Orders that could otherwise apply in Plaintiff's case.  Plaintiff has failed to show that an issue of material fact remains as to Defendant's duty to pay overtime under state law.  The court therefore finds that overtime pay owing to Plaintiff, if any, must be required under federal law.

**II.  Federal Overtime Wage Law**

   The Fair Labor Standards Act of 1938 ("FLSA") sets forth the general rule of overtime at 29 U.S.C. § 207(a), which provides that a workweek longer than 40 hours is prohibited unless the

---

[1] 13 C.C.R. § 1200(a) provides that the section applies to vehicles listed in Cal. Vehicle Code § 34500. Cal. Vehicle Code 34500(k) lists as covered any "commercial motor vehicle with a gross vehicle weight rating of 26,001 or more pounds . . . ."  Thus, any commercial motor vehicle with a gross vehicle weight rating of more than 26,000 pounds is included within the exception to the application of Wage Rules for both transportation and agricultural workers.

7

worker receives compensation for the time worked over 40 hours per week at a rate of one and one-half times his standard rate of pay. Prior to the 1974, section 7 of the FLSA contained an exemption for agricultural work at subsections (c) and (d) (29 U.S.C. §§ 207(c) and (d)). In 1974, amendments of the FLSA repealed subsections (c) and (d), leaving the agricultural exemption set forth at 29 U.S.C. § 213(b)(12) which had been added by the 1966 amendments. Defendant's motion for summary adjudication raises two issues with regard to federal requirements and Plaintiff's opposition raises one additional issue. Defendant's motion asks the court to determine whether the fact that Plaintiff occasionally transported feed for the dairy cows to Defendant's dairy ranch has any effect on the court's determination of Plaintiff's exempt status. Second, Defendant's motion asks the court to determine whether Plaintiff's usual activity of hauling milk from the farm constitutes agricultural work within the meaning of the exemption. Finally, Plaintiff's opposition to Defendant's motion raises the issue of whether application of the agricultural exemption is appropriate where the product shipped by Defendant to the cheese plant was a product which Plaintiff characterizes as being manufactured from raw milk by a process of ultrafiltration which removes significant amounts of water. The court will give consideration to each issue in turn.

Regulations applying the provisions of the FLSA provide the standards for determining the applicability of any exemption from overtime pay requirements as follows:

> An employer who claims an exemption under the [FLSA] has the burden of showing that it applies (Walling v. General Industries Co., 330 U.S. 545; Mitchell v. Kentucky Finance Co., 359 U.S. 290). Conditions specified in the language of the Act are "explicit prerequisites to exemption" (Arnold v. Kanowsky, 361 U.S. 388). "The details with which the exemptions in this Act have been made preclude their enlargement by implication" and "no matter how broad the exemption, it is meant to apply only to" the specified activities (Addison v. Holly Hill, 322 U.S. 607; Maneja v. Waialua, 349 U.S. 254). Exemptions provided in the Act "are to be narrowly construed against the employer seeking to assert them" and their application limited to those who come "plainly and unmistakably within their terms and spirit" (Phillips v. Walling, 334 U.S. 490; Mitchell v. Kentucky Finance Co., 359 U.S. 290; Arnold v. Kanowsky, 361 U.S. 388).

29 C.F.R. § 780.2.

### A. Plaintiff's Occasional Delivery of Alfalfa Feed to the Farm is Not Determinative

8

The first issue – whether the fact that Plaintiff occasionally hauled feed for the dairy cows to Defendant's farm – requires little discussion. Put simply, exemption from overtime pay entitlement under FLSA is an all-or-nothing proposition. If *any* portion of the employee's workweek is spent in work that is not agricultural and therefore not exempt, no exemption may be claimed by the same employer for any amount of work that is agricultural under FLSA. Wyatt v. Holtville Alfalfa Mills, Inc., 106 F.Supp. 624, 629 (S.D. Cal. 1952). In other words, an employee's hours worked in a given workweek are not exempt under the agriculture exemption unless all the work performed that week was exempt agricultural work. Thus, it is of no import to the court's determination of Plaintiff's overtime exemption status that Plaintiff may have spent some small amount of time hauling hay for feed for the cattle if it is determined that Plaintiff's trips to the Hilmar Cheese Plant are determined to be not agricultural in nature.

### B. Agricultural Activity and Business Relationship

Defendant contends that Plaintiff is among those exempted from the overtime provision of section 207(a) by operation of the agricultural exemption set forth at section 213(b)(12), which applies to "any employee employed in agriculture . . . ." What constitutes employment in agriculture has been the subject of no small amount of judicial review and interpretation.

Section 3(f) of the FLSA defines "agriculture" thus:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural or horticultural commodities [. . .] *performed by a farmer or on a farm* as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f) (italics added).

The Supreme Court observed that the definition of agriculture set forth in section 203(f) implies two related but distinct meanings:

> First there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves

9

>farming practices, which are *performed either by a farmer or on a farm*, incident to or in conjunction with "such" farming operations.

Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762-763 (1948) ("McComb") (italics added).  The first prong of "agriculture" as framed in McComb incorporates all activities expressly mentioned in section 3 of the FLSA.  This includes, specifically, dairying.  29 U.S.C. § 203; Skipper v. Superior Dairies, 512 F.2d 409, 412 (5th Cir. 1975).  However, "hauling products to or from the farm is not primary farming."  Bayside Enter. v. N.L.R.B., 429 U.S. 298, 301 (1977) ("Bayside").  "Such hauling may, however be secondary farming if it is work performed 'by a farmer or on a farm as an incident to or in conjunction with such farming operations.'"  Id. (quoting 29 U.S.C. §203(f)).  Thus, whether Plaintiff is exempt from overtime pay under FLSA depends on whether his activities fall within this secondary meaning of agriculture.

The determination of whether an employee is engaged in agriculture for purposes of FLSA requires an individualized and highly fact-dependent examination.  Herman v. Continental Grain Co., 80 F.Supp.2d 1290, 1292-1293 (M.D. Ala. 2000).  In examining issues that implicate the applicability of the agricultural exemption to overtime pay, the court focuses primarily on "the nature of the employee's activities, and not the character of the employer's business."  Wyatt v. Holtville Alfalfa Mills, Inc., 106 F.Supp. 624, 628 (S.D. Cal. 1952).  Thus, the court's analysis of Plaintiff's status as a worker in "agriculture" is not influenced by the fact that Defendant has divided certain aspects of his farming operation in to separate "doing business as" components.

To a large extent, the court's inquiry is guided by regulations implementing the overtime provisions of the FLSA.  These guidelines are set forth at 29 C.F.R. §§ 780 et seq.  The guidelines recognize that modern society has specialized a number of functions that were traditionally performed on the farm but now are organized as separate productive activities that are no longer classified as "agriculture."  See McComb, 377 U.S. at 760-761 (traditional farming functions such as making of tools and production of fertilizer once performed by the farmer are, in a technologically advanced society, operated as "separate and independent functions" "in conjunction with the agricultural function but no longer a part of it").  "No precise lines can be

10

drawn which will serve to delimit the term 'farmer' in all cases. Essentially, however, the term ["Farmer"] is an occupational title and the employer must be engaged in activities of a type and to the extent that the person ordinarily regarded as a "farmer" is engaged in order to qualify for the title. If this test is met, it is immaterial for what purpose he engages in farming or whether farming is his sole occupation." 29 C.F.R 780.130. "The question is whether the activity in the particular case is carried on a part of the agricultural function or is separately organized as an independent productive activity." 29 C.F.R. § 780.104.

The interpretive guidelines set forth at 29 C.F.R. § 780.154 instruct as follows:

> The term "delivery [of an agricultural commodity] to market" includes taking agricultural or horticultural commodities, dairy products, livestock, bees or their honey, fur-bearing animals or their pelts, or poultry to market. It ordinarily refers to the initial journey of the farmer's products from the farm to the market. The market referred to is the farmer's market which normally means the distributing agency, cooperative marketing agency, wholesaler or processor to which the farmer delivers his products. Delivery to market ends with the delivery of the commodities at the receiving platform of such a farmer's market (Mitchell v. Budd, 350 U.S. 473). *When the delivery involves travel off the farm (which would normally be the case) the delivery must be performed by the employees employed by the farmer in order to constitute an agricultural practice.*

Id. (italics added).

This interpretive guideline appears to the court to be conclusive of the issue of whether a farmer or person employed by a farmer is employed in agriculture as that term is defined by for purposes of determining exemption from overtime under FLSA if he transports a "dairy product" from the farm to the processor. The court is well aware that the application of this guideline produces a result that is directed entirely by the nature of the employees business relationship – or lack of relationship – with the farmer, not by the nature of the worker's activity. There is a large body of case authority, perhaps typified by the Supreme Court case of Holly Farms Corp. v. N.L.R.B., 517 U.S. 392 (1996), that firmly establishes that persons who haul farming commodities off of the farm but are employed by someone other than the farmer whose produce is being hauled do not work in agriculture within the meaning of the FLSA. In Holly Farms, the plaintiff claimed that drivers who transported live-caught chickens destined for slaughter from

11

the independent farms that had raised the chicks that were supplied by the plaintiff but raised on the independent farms did not engage in work "on the farm" and so were not exempt from the requirement of overtime pay.  517 U.S. at 408-409;  see also Bayside 429 U.S. at 301-302 (workers who delivered chicks and feed from producer's feed mill to independent contractor farms for raising not agricultural workers); N.L.R.B. v. Central Oklahoma Milk Producers Ass'n, 285 F.2d 495, 497 (10th Cir. 1960) (granting enforcement of N.L.R.B. order finding milk tank-truck drivers entitled to overtime under FLSA where drivers were employed by separate trucking entity owned by dairy association); Sanderson Farms, Inc. v. N.L.R.B., 335 F.3d 445, 451-452 (5 Cir. 2003) (applying Holly Farms to reach same result where chicken producer had more control over contract farms that raised the chicks).

It is notable that the majority in Holly Farms pegged their holding that workers who caught and crated live chickens on the contract farms and loaded them on the trucks, as well as the truckers, were not agricultural workers because they lacked a business relationship with the farmer. See Holly Farms, 517 U.S. at 402-403 (agreeing with N.L.R.B.'s determination that catch loading and transport of live haul was not "incident to or in conjunction with" farming because there was no business relationship between the haulers and the farmers).  While the minority in Holly Farms agreed with the majority's holding that the live haul truck drivers did not work in "agriculture," they criticized the majority's holding that chicken catchers and fork lift operators were in the same category because of the lack of a business relationship with the contract farmers.  See id. at 411 (minority opines that tethering the "on the farm" analysis to existence or absence of "business relationship" between farmer and worker misreads the definition set forth in section 3(f)).

The minority opinion in Holly Farms appears to express the tension between the recognition of specialization in traditional agricultural functions so that the policy purpose of applying overtime widely is realized on one hand and the idea that certain functions that were traditionally performed by farmers but may be outsourced in a more technologically complex

should remain within the realm of "agriculture", on the other. See Holly Farms, 517 U.S. at 403 n.8 (noting that the "or on a farm" language in the definition of agriculture was inserted to address concerns raised in the Senate that wheat farmers who contract the threshing of their wheat to non-employee workers should not be liable for overtime pay).  Certainly, the court can understand the sentiment that the mere fact that Plaintiff is employed by the farmer disqualifies him for payment for overtime work where a person employed by the cheese company (or any other employer) doing exactly the same work would be entitled to such compensation seems uncomfortably arbitrary.  This court, however, may not engage such a policy-based analysis where Congress has provided clear guidelines that plainly apply under the facts of this case and mandate the conclusion that Plaintiff is subject to exemption from the overtime requirement of the FLSA because he is employed in agriculture.

### C. "Ultrafiltration" and "Dairy Product"

Plaintiff's opposition to Defendant's motion for summary adjudication raises the issue of whether the product that Plaintiff transported from Defendant's farm to the cheese plant was a "dairy product" or was an industrial product such that the agriculture exemption was inapplicable.  Defendant's reply to Plaintiff's contention is essentially limited to the claim that the product hauled by Plaintiff to the cheese plant was milk destined to be made into cheese and the fact that it was treated by ultrafiltration is of no consequence.  Plaintiff cites two cases, Mitchell v. Budd, 350 U.S. 473 (1956) and N.L.R.B. v. Tepper, 297 F.2d 280 (1961), to support the contention that the hauling of a dairy product that is the result of the application of a process that removes the dairy product from its raw, natural state does not constitute employment in agriculture for purposes of the FLSA.  As the court previously noted, at the time these cases were decided, the overtime provisions of section 7 of the FLSA contained a subsection that exempted those employed in agriculture from overtime but providing that the exemption applied only to activities carried out with respect to commodities in their "raw or natural state." 29 U.S.C. §§ 207(c), (d) (repealed 1972); Hodgson v. Twin City Foods, Inc., 464 F.2d 246, 250 n.3 (9th Cir.

1972).

In addition, the court notes that 29 U.S.C. § 213, which lists the specific exemptions to the overtime provisions of section 207(b) previously listed as exempt "'any individual employed within the area of [. . . ] handling, [. . .] and preparing *in their raw or natural state* [. . .] agricultural or horticultural commodities for market , or in making cheese or butter or other dairy products . . . .'" Watt, 106 F.Supp. at 629 (quoting 29 U.S.C. § 213(a)(10) as extant in 1952). This section was repealed as a result of the 1966 amendments to the act and the now-extant subsection (b)12 was added, which simply exempts from overtime "any employee employed in agriculture" without further qualification of the term. So far as the court can determine, the definition of "agriculture" quoted above from 29 U.S.C. § 203(f) has remained unchanged since enactment of the FLSA in 1938. The issue that is not addressed by either party is whether the repeal of section 207, subdivisions (c) and (d) in 1972 and the repeal of the former 29 U.S.C. § 213(a)(10) in 1966 affects the definition of "Agriculture" as set forth at section 13(f) of the FLSA (29 U.S.C. § 207(f)) and/or changes the applicability of cases prior to 1972 that made determinations regarding the nature of worker activity based on whether the material being handled was in its raw or natural state.

The court has searched for federal cases that specifically addresses the effect of the 1972 statutory changes in the context of activities involving agricultural commodities not in their raw or natural state and can find none. Neither do there appear to be any cases after 1972 that use the term "raw or natural" to differentiate agricultural from manufactured commodities. On the other had, there appears to be no case law indicating that holdings in cases such as Hodgson were invalidated as a result of the statutory amendments. Lacking any case authority, the court turns again to the application guidelines set forth in 29 C.F.R. §§ 780 et seq.

At 29 C.F.R. § 780.147, the regulations instruct in pertinent part:

> In determining whether a practice performed on agricultural or horticultural commodities is incident to or in conjunction with the farming operations of a farmer or a farm, it is also necessary to consider the type of product resulting from the practice--*as whether the raw or natural state of the commodity has been*

> *changed*. Such a change may be a strong indication that the practice is not within the scope of agriculture (Mitchell v. Budd, 350 U.S. [at] 473); the view was expressed in the legislative debates on the Act that it marks the dividing line between processing as an agricultural function and processing as a manufacturing operation (Maneja v. Waialua, 349 U.S. 254, citing 81 Cong. Rec. 7659–7660, 7877–7879). *Consideration should also be given to the value added to the product as a result of the practice and whether a sales organization is maintained for the disposal of the product.*

Id. (italics added). In a similar vein, 29 C.F.R. § 780.151 instructs that "the following activities are, among others, activities that may be performed in the 'preparation for market' of the indicated commodities and may come within [29 U.S.C. § 20]3(f). [¶ . . . ¶] (f). Dairy products. Separating, cooling, packing, and storing."

Defendant urges the court to view the product Plaintiff hauled to the cheese factory as being unaltered by the ultrafiltration process such that it should be considered the agricultural commodity "milk." The court disagrees. The evidence clearly establishes the chemical composition of the milk is changes because a significant amount of water is removed. See Wyatt, 106 F.Supp at 631 (dehydration changes the chemical content of the commodity). Further, the process adds value to the product over what the raw commodity because Defendant admits that he is able to ship more "milk" to market using substantially fewer trips because the volume is reduced. For that admission to make any business sense, the only interpretation is that the ultrafiltered milk fetches a higher price per unit of volume than raw or natural milk would so that the decrease in volume is at least made up by an increase in price per unit of volume. Finally, Defendant admits that he is the only dairy farmer, so far as he knows, that engages in the process of ultrafiltration of milk in preparation for shipment. Thus, it cannot be held that ultrafiltration is a practice that has become by common use a traditional dairy function. The court can find no facts that support the proposition that ultrafiltration of milk prior to shipment is a function that lies on the agriculture side of the line that divides agriculture from manufacturing.

As noted above, Defendant has the burden to show that there is no issue of material fact as to whether Plaintiff is exempt from the overtime provisions of 29 U.S.C. § 207(b). Where

15

Defendant fails to carry his burden is in the failure to show the process of transforming milk into the ultrafiltered product that Plaintiff transported to the cheese factory is, in fact, an agricultural, as opposed to manufacturing, function. If the court has no basis upon which it can conclude that the product Plaintiff was hauling to the cheese plant was a "dairy product" (as opposed to a manufactured product), the court cannot conclude that Defendant was engaged in "agriculture" when he shipped his product to the cheese plant or that Plaintiff was correspondingly carrying out an agricultural function. Defendant's motion for summary adjudication must therefore fail. There is no question that reasonable minds could differ as to both sub-parts (B) and (C) of this opinion. However, the court finds that the application of guidelines established by Congress clearly prevent Defendant from meeting the high burden of production of proof that would allow the court to grant summary adjudication.

THEREFORE, it hereby ORDERED that Defendant's motion for summary adjudication of Plaintiff's first claim for relief for non-payment of overtime wages is DENIED.

IT IS SO ORDERED.

Dated:   February 4, 2013

_____
SENIOR DISTRICT JUDGE